IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JAMES HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-900 (RDA/IDD) |
| ) | |
| INTEGRITY MANAGEMENT ) | |
| CONSULTING, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Integrity Management Consulting, Inc.'s, Chris Romani's, and Mary Beth Romani's (collectively, "Defendants") Motion to Dismiss Plaintiff James Harris's Amended Complaint ("Motion"). Dkt. 23. Plaintiff James Harris ("Plaintiff") has been afforded the opportunity to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and has responded. The Court dispenses with oral argument as it would not aid in the decisional process. *See* Local Civil Rule 7(J). The Motion to Dismiss is now fully briefed and ripe for disposition. Considering the Motion, Dkt. 23, the relevant exhibits, Plaintiff's Opposition to the Motion, Dkt. 31, and Defendants' Reply, Dkt. 32, the Court grants the Motion for the reasons that follow.

I. BACKGROUND

Plaintiff, proceeding *pro se*, alleges that he was terminated from his position as a project manager for Defendant Integrity Management Consulting, Inc. ("Integrity"), in violation of the Americans with Disabilities Act of 1990 ("ADA") and Title VII of the Civil Rights Act of 1964. Dkt. 18 ¶¶ 21-28. Plaintiff also claims that his property was converted in violation of Virginia law when he was forbidden from retrieving his property from the premises of the Defense Health

Agency ("DHA").  *Id.* ¶¶ 29-34.  This Court accepts all facts alleged within the Amended Complaint as true, as it must at the motion to dismiss stage.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In support of these allegations, Plaintiff alleges that Defendants hired him as a Project Manager under the direction of Karl Satterwhite ("Satterwhite"), the then-Director of Operations for Integrity.  Dkt. 18 ¶ 4.  In this role, Plaintiff supported DHA and the Enterprise Intelligence Agency Solutions Department.  *Id.*  Plaintiff's employment with Defendant began October 29, 2018.  *Id.*  In his first weeks of employment, Plaintiff received high marks for his work.  *Id.*  His employer gave him gift cards in appreciation for his good work after he had logged thirty days on the job, *id.*, and Director of Operations Angela Weisenberger ("Weisenberger") remarked that she was pleased to receive positive feedback from a client regarding Plaintiff's performance.  *Id.* ¶ 5.

In December 2018, Plaintiff began working from home following his husband's "surgical procedure that caused significant limitations[.]"  *Id.* ¶ 6.  Plaintiff received approval from a contractor officer at DHA to work on a modified schedule while his husband recovered.  *Id.*  After Plaintiff began this modified work schedule, he encountered problems with Weisenberger in the workplace, including "discrimination, harassment, and prejudice."  *Id.*  According to Plaintiff, Weisenberger "consistently harassed and belittled" him.  *Id.* ¶ 11.  The Amended Complaint refers to three disapproving comments Weisenberger made to Plaintiff.  First, Weisenberger allegedly told Plaintiff she "was not fond of" him or his "decision of being a gay black male working for Integrity."  *Id.* ¶ 8.  Second, she supposedly remarked that "[m]ilitary spouses think they are privileged."  *Id.* ¶ 9.  And third, according to Plaintiff, Weisenberger told Plaintiff that he earned too high a salary, that "Integrity had to do something about [his] salary" or otherwise "get [him] out the door somehow."  *Id.* ¶ 10.

About a month after Plaintiff's husband underwent surgery, Plaintiff accompanied him to a medical appointment at a local hospital. *Id.* ¶ 14. While his spouse received treatment at this appointment on January 22, 2019, Plaintiff used his employer-issued laptop to perform tasks for Integrity's client, DHA. *Id.* That same day, Integrity President and CEO Chris Romani e-mailed Plaintiff, informing him that the company had received "additional concerns from the client" about Plaintiff's absence from the client's worksite. *Id.* ¶ 15. Explaining that he was also concerned Plaintiff had not called Weisenberger that morning "despite the fact that you were supposed to be at work today[,]" Chris Romani notified Plaintiff that he would be terminated. *Id.* The e-mail caught Plaintiff by surprise given that he had worked remotely that day. *Id.* Later, Integrity told Plaintiff that two DHA representatives requested that he be removed from his post. *Id.* ¶ 16.

Integrity did not permit Plaintiff to return to DHA's premises to retrieve his personal belongings. *Id.* Integrity attempted to send Plaintiff all of his belongings but apparently failed to provide him everything he left at DHA. *Id.* ¶¶ 16, 17. On January 28, 2019, Satterwhite told Plaintiff that he would receive the rest of his personal effects, but Plaintiff maintains he is still missing more than $2,500 worth of his property. *Id.* ¶ 17.[1]

On July 9, 2019, Plaintiff filed suit in this Court. Dkt. 1. On March 24, 2020, the Court denied Defendants' Motion to Dismiss, and on May 19, 2020, the Court granted Plaintiff leave to file an Amended Complaint. *See* Dkt. Nos. 17; 19. Defendants then moved to dismiss the Amended Complaint. Dkt. 23. Plaintiff opposed that motion, Dkt. 31, and Defendants submitted a reply in support of their motion to dismiss, Dkt. 32.

---

[1] The items Plaintiff alleges he never received included a printed copy of a government-issued form, certificates of security training, post-it notes, a binder with plastic inserts, and a safe deposit key. *Id.* ¶¶ 18-19.

3

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Yet, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508)).

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes his filings. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014)). That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of his obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into his advocate. *Green v. Sessions*, No. 1:17–cv–01365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

III. ANALYSIS

A. ADA Claim

Plaintiff first brings a claim under the ADA. To start, in the Amended Complaint, Plaintiff alleges facts about his spouse's disability, not any claimed disability of his own. Dkt. 18, ¶¶ 6, 14, 22. In Plaintiff's opposition to Defendants' Motion, he maintains that "the Plaintiff and his spouse both have conditions" that constitute disabilities under the ADA. Dkt. 31, 2. Whether or not Plaintiff indeed has a disability himself, he alleges that his termination stemmed from Defendants' failure to accommodate his schedule so that he could attend to his husband's disability—not his own—and the Court analyzes his ADA claim accordingly.

Defendants emphasize that Count One must be dismissed because the ADA does not provide a cause of action to non-disabled employees who care for their disabled spouses. *See* Dkt. Nos. 23, 5-7; 32, 1-2. This argument appears to ignore that claims of associational discrimination are cognizable under the ADA. Associational discrimination under the ADA means "excluding or otherwise denying equal jobs or benefits to a qualified individual because of" their association with a disabled person. 42 U.S.C. § 12112(b)(4). Simply put, "[a]ssociation liability applies when the plaintiff himself has been discriminated against because of his relationship or association with a disabled person." *Fonner v. Fairfax Cty.*, 415 F.3d 325, 333 (4th Cir. 2005) (citing *Tyndall v. Nat'l Educ. Centers, Inc. of Cal.*, 31 F.3d 209, 214 (4th Cir. 1994)). And while an ADA associational discrimination claim cannot be based on "loose associations" with disabled persons, like a doctor who treats disabled patients, association with a disabled spouse surely fits the bill. *A Helping Hand, LLC v. Baltimore Cty.*, 515 F.3d 356, 364 n.4 (4th Cir. 2008); *see also Dodson v. Coatesville Hosp. Corp.*, 773 F. App'x 78, 83 (3d Cir. 2019) (analyzing plaintiff's associational disability claim in case involving his spouse).

5

However, a plaintiff may state an ADA associational disability claim only in certain circumstances. Under the ADA, "an employer may not make decisions based on the 'belie[f] that the [employee] would have to miss work' in order to take care of a disabled person." *Tyndall*, 31 F.3d at 214. That sort of unfounded fear, however, is not one that Plaintiff alleges in the Amended Complaint. Instead, Plaintiff did not appear in person at his assigned worksite because he attended a medical appointment with his spouse. Dkt. 18, ¶ 14. Following a client complaint about his absence, Integrity terminated Plaintiff's employment. *Id.* ¶ 15. Although associational liability is authorized under certain circumstances, "[t]he ADA does not require an employer to restructure an employee's work schedule to enable the employee to care for a relative with a disability." *Tyndall*, 31 F.3d at 214. The Fourth Circuit's holding in *Tyndall* is instructive in this case:

> Because Tyndall's termination was not based on any assumption regarding future absences related to [her son's] care, but instead resulted from her record of past absences and her clear indication that she needed additional time off, we hold that [the defendant's] actions did not constitute discrimination based on Tyndall's association with a disabled individual.

*Id.* For that reason, one recent decision from a court in this Circuit dismissed an ADA count for failure to state a claim when allegations supporting a plaintiff's ADA associational disability claim rested upon her record of past absences preceding the employer's adverse action. *See Leitner v. Liberty Univ., Inc.*, No. 6:19-CV-00029, 2020 WL 7128972, at *8 (W.D. Va. Dec. 4, 2020) (dismissing ADA claim pursuant to Rule 12(b)(6) because the "allegations of associational discrimination" were "insufficient under *Tyndall*").

Drawing all inferences in Plaintiff's favor, the facts alleged do not suggest that Integrity terminated Plaintiff due to a speculative, *ex ante* fear that attention to his husband's disability might interfere with his work duties. Plaintiff's claim that his employer failed to accommodate him is without merit, as Integrity appears to have done more than what the law requires. Indeed,

Integrity granted Plaintiff's request to work on a modified, telework schedule to care for his husband. Dkt. 18, ¶ 6. Integrity terminated Plaintiff only after he failed to comply with client expectations regarding his in-person appearance at his worksite. *Id.* ¶ 15. These facts foreclose Plaintiff's associational disability claim, and dismissal of Plaintiff's ADA claim is therefore appropriate. *See, e.g.*, *Leitner*, 2020 WL 7128972, at *8.

## B. Title VII Claim

Plaintiff also brings a claim under Title VII of the Civil Rights Act of 1964. Dkt. 18, ¶¶ 24-28. At the outset, Plaintiff alleges that he "was discriminated against due to his race, age, sex, sexual orientation, and color." *Id.* ¶ 28. Title VII provides that "it shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise discriminate against any individual . . . because of such individual's . . . race [or] sex." 42 U.S.C. § 2000e-2(a)(1); *Bostock v. Clayton Cty.*, 590 U.S. --- (2020). As Title VII does not encompass claims of age discrimination, *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 153 (4th Cir. 2020), the Court assesses whether Plaintiff states a claim under Title VII due to his race, sex, or sexual orientation. In light of its obligation to liberally construe the allegations of a *pro se* plaintiff, the Court evaluates Count Two of Plaintiff's Amended Complaint to determine whether it states a disparate treatment claim, a hostile work environment claim, or both.[2]

### 1. Disparate Treatment

Although a plaintiff is not required to allege facts that make out either a direct or *prima facie* case of discrimination under Title VII, to survive a motion to dismiss, a plaintiff must still

---

[2] If the reference to Plaintiff's loss of personal property in the Amended Complaint is part of Plaintiff's Title VII claim and not merely an aspect of his asserted damages, Dkt. 18, ¶ 25, there are no factual allegations in the Amended Complaint to support a claim that Plaintiff's property was not returned to him due to his protected characteristics. *See generally* Dkt. 18.

7

plead facts sufficient to state all elements of his claim. *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). At the motion to dismiss stage, a Title VII "plaintiff must plead facts that, when all reasonable inferences are drawn in the plaintiff's favor . . . would permit finding either that the plaintiff has pled a 'direct' case or that plaintiff has made a prima facie case." *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 818 (E.D. Va. 2016) (citation omitted). To adequately allege a disparate treatment claim under Title VII, a plaintiff must allege facts that could show: (1) he is a member of a protected class; (2) he suffered from an adverse employment action; (3) at the time the employer took the adverse employment action he was performing at a level that met the employer's legitimate expectations; and (4) he was treated differently than similarly situated employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Significantly, Plaintiff fails to identify facts that would support direct evidence that discriminatory animus on the basis of his race, sex, or sexual orientation led to his termination. This Court is not required to accept Plaintiff's conclusory assertions, unsupported by factual allegations, that his termination was so motivated. "[T]he 'presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of [liability].'" *Crisano v. Grimes*, No. 1:19-cv-1612, 2021 WL 120943, at *7 (E.D. Va. Jan. 12, 2021) (quoting *Young v. City of Mt. Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)). And even if the Amended Complaint is read to allege discriminatory animus on the part of Weisenberger, Plaintiff has not pleaded sufficient facts to demonstrate a nexus between her actions and Plaintiff's termination. Plaintiff does not allege that Weisenberger directed or influenced Integrity's decision to terminate him. *See* Dkt. Nos. 18; 31. Instead, Plaintiff identifies Christopher Romani as the relevant Integrity decisionmaker who endorsed

8

Plaintiff's termination after two DHA representatives requested Plaintiff's removal. *See* Dkt. 18, ¶ 16. But to plausibly allege a violation of Title VII, an employee must identify a decisionmaker with discriminatory intent who decided to take an adverse action. *Hill v. Lockheed Martin Logistics Mgmt.*, Inc., 354 F.3d 277, 286 (4th Cir. 2004) ("[T]he pertinent inquiry is whether the decisionmaker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria.") (citing *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 678 (7th Cir. 2002)).

Plaintiff's pleadings similarly fail to allege facts sufficient to permit a finding that he has made a *prima facie* case of discrimination. Even assuming the Amended Complaint alleges facts that might show Plaintiff was performing at a level that met his employer's legitimate expectations, Plaintiff has not alleged any facts that might support the fourth element of a *prima facie* case for disparate treatment—that he was treated differently than similarly situated employees outside his protected class. On that basis, Plaintiff's Title VII discrimination claim under a disparate treatment theory fails. *See Yin v. CTI Consultants, Inc.*, No. 3:17-cv-296, 2018 WL 1569486, at *6 (E.D. Va. Mar. 30, 2018) (dismissing plaintiff's Title VII disparate treatment claim "because, at the very least, he fails to adequately plead the fourth aspect of a prima facie case"). In fact, Plaintiff's sole reference to how another Integrity employee was treated—if it is indeed relevant to Plaintiff's argument at all as a comparator case—undermines his own Title VII claim because it suggests the company frowned on teleworking arrangements generally. *See* Dkt. 18, ¶¶ 12-13. The allegation references an earlier ADA and Title VII suit brought by a former Integrity employee, a white female who did not disclose her sexual orientation, regarding a teleworking dispute with Weisenberger. *Id.* (citing *Kichinko v. Integrity Mgmt. Consulting, Inc.*, No. 1:16-cv-201 (E.D. Va. 2016)); *see also* Dkt. 23, 9 n.4.

9

Affording these alleged facts a liberal construction, Plaintiff undermines his claim of discrimination based on race or sex. He states that "these actions are not uncommon from Angela Weisenberger as she has been the catalyst for similar situations involving employees of Integrity[.]" Dkt. 18, ¶ 13. As for his Plaintiff's discrimination claim founded on sexual orientation, he fails to allege any individual referenced in the Amended Complaint is "similarly situated" to him for purposes of her disparate treatment claim, much less that he was treated differently from any other employee on the basis of his sexual orientation. *See* Dkt. 18. Taking each fact alleged in the Amended Complaint as true, there remains no basis for concluding Plaintiff was fired on the basis of his race, color, sex, or sexual orientation. These shortcomings foreclose Plaintiff's reliance on a disparate treatment theory of discrimination under Title VII. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) ("While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief.").

Consequently, Plaintiff fails to state a claim for discrimination on the basis of race, sex, or sexual orientation because has not alleged facts that could support a finding of disparate treatment under Title VII on either direct or circumstantial evidence.

## 2. Hostile Work Environment

The Court also analyzes Count Two of the Amended Complaint under Title VII's provision for hostile work environment claims. Again, to survive a Rule 12(b)(6) motion, Plaintiff need only plead facts sufficient to show he could make a direct or *prima facie* case under Title VII. *See Hinton*, 185 F. Supp. 3d at 818. Still, Plaintiff does not allege facts that would support a hostile work environment finding based on direct evidence. *See generally* Dkt. 18. Were Plaintiff to proceed under the *McDonnell Douglas* framework instead, he must plead

facts that could permit a finding that Defendants' conduct (1) was unwelcome; (2) was based on his race, sex, or sexual orientation; (3) was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive work environment; and (4) was imputable to his employer. *See Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011).

        The Amended Complaint identifies three comments Weisenberger made to Plaintiff. Two of these comments, concerning Plaintiff's salary and his role as a military spouse, do not relate to a category protected by Title VII. Dkt. 18 ¶¶ 9-10. In another remark, Weisenberger told Plaintiff she "was not fond of" him or his "decision of being a gay black male working for Integrity." *Id.* ¶ 8. Assuming all facts alleged in the Amended Complaint as true, the Court views this statement as ignorant, insensitive, and ill-mannered but under the applicable legal authorities, ultimately insufficient to support a hostile work environment claim.

        With the possible exception of rare circumstances not presented here, one isolated comment is not enough to state a harassment claim under Title VII. *See Puckett v. City of Portsmouth*, 391 F. Supp. 2d 423, 435 (E.D. Va. 2005) (noting that "isolated incidents" do not create a hostile work environment) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)). *But see Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015) (en banc) (holding that even a single incident involving the use of certain racial epithets may be sufficiently severe to create a hostile work environment). Construing all allegations in the Amended Complaint as true, Plaintiff falls short of plausibly pleading facts that could support an actionable Title VII hostile work environment claim. Neither does Plaintiff allege that Weisenberger's comment, or his workplace environment generally, altered the terms of his employment or created an abusive work environment. *Okoli*, 648 F.3d at 220.

Plaintiff also attached exhibits to his opposition to Defendants' Motion. In those exhibits and in his opposition brief, Plaintiff attempts to introduce new facts not alleged in the Amended Complaint, including an allegation that Weisenberger made a second offensive comment. *See* Dkt. 31, 7 (alleging that Weisenberger told Plaintiff that his "color might be an issue [for clients] because they're used to seeing a white face"). Nevertheless, "it is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss," *Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc.*, 86 F. Supp. 3d 464, 472 (E.D. Va. 2015), even in cases involving a *pro se* litigant. *See Nedrick v. Southside Reg'l Med. Ctr.*, No. 3:19-cv-202, 2020 WL 534052, at *3 (E.D. Va. Feb. 3, 2020) (applying rule to *pro se* plaintiff's response to a motion to dismiss). Even considering Plaintiff's additional allegations in his opposition brief and attached exhibits, however, the facts alleged remain insufficient to state a claim under the ADA or Title VII. Were it even alleged in Plaintiff's Amended Complaint, this additional comment would still not save Plaintiff's harassment claim because two comments over a three-month period fall short of the "all-consuming" nature of harassing conduct required for such a claim to survive a Rule 12(b)(6) motion. *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 301 (4th Cir. 2019). Ms. Weisenberger's alleged racist, homophobic, and pejorative comments in these "limited contexts" simply do not beget a Title VII action on Plaintiff's behalf.

### C. Conversion Claim

Plaintiff also brings a claim for conversion of property, alleging that Defendants have unlawfully retained Plaintiff's personal property. Dkt. 18, ¶¶ 29-34. Plaintiff, however, does not plead that any Defendant engaged in an act of dominion or control over his personal property. And according to the Amended Complaint, DHA, not Defendants, are in possession of Plaintiff's personal property. *See id.* ¶¶ 16-17.

What is more, this Court declines to extend supplemental jurisdiction over Plaintiff's state law claim for conversion because the Court has dismissed all claims arising under this Court's original jurisdiction. 28 U.S.C. § 1367(c)(3); *see also Shooting Point, L.L.C. v. Cumming*, 238 F. Supp. 2d 729, 740 (E.D. Va. 2002), *aff'd*, 368 F.3d 379 (4th Cir. 2004). To be sure, district courts enjoy broad discretion to determine whether exercising supplemental jurisdiction over a particular case is appropriate. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Accordingly, Count Three is therefore dismissed without prejudice to Plaintiff's ability to pursue this claim in an appropriate state court.

## IV. CONCLUSION

For these reasons, Plaintiff has failed to state a claim upon which relief may be granted. Accordingly, Defendants' Motion to Dismiss, Dkt. 23, is GRANTED, and the Amended Complaint is hereby DISMISSED.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiffs wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to enter judgment in Defendants' favor, forward copies of this Order to Plaintiff, *pro se*, and close this civil action.

It is SO ORDERED.

Alexandria, Virginia
March 16, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge